IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

COUNTRYWIDE HOME LOANS,

    Plaintiff,

v.

MORTGAGE GUARANTY INSURANCE CORPORATION,

    Defendant.

No. C 10-00233 JSW

**ORDER GRANTING DEFENDANT'S MOTION TO STAY ACTION PENDING RESOLUTION OF ARBITRATION**

Now before the Court for consideration is Mortgage Guaranty Insurance Corporation's ("MGIC") motion to stay action pending resolution of arbitration. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and concludes that the matter is suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for December 2, 2011 is HEREBY VACATED. For the reasons set forth in the remainder of this Order, MGIC's motion is GRANTED, and the matter is STAYED pending completion of arbitration.

**BACKGROUND**

Countrywide Home Loans, Inc. ("Countrywide") purchased mortgage default insurance from MGIC to cover mortgage loans that Countrywide issued to third-party homeowners. (Compl. at ¶ 7.) Countrywide individually submitted each of the loans that it issued for MGIC to insure. Each of the approximately 1,400 loans in controversy is subject to an insurance contract called the Flow Policy. (Compl. at ¶ 10.) Both parties agree that for the purposes of

this lawsuit, all 1,400 default claims are governed by identical master policies that are collectively referred to as the Flow Policy.

The Flow Policy allows MGIC to deny insurance coverage for loans obtained or approved through various types of first-party misrepresentations. (Flow Policy, Ex. A. §§ 2.2, 2.3, 2.4, 4.4, 4.11.) In the wake of the United States mortgage crisis, many Countrywide loans defaulted, and MGIC invoked the Flow Policy to deny Countrywide coverage for approximately 1,400 of the defaults. (Compl. at ¶¶ 38-39.) The Flow Policy continues to govern and insure thousands of Countrywide mortgage loans. (Compl. at ¶¶ 70-71.)

The Flow Policy also contains an arbitration clause that provides:

> [A]ll controversies, disputes or other assertions of liability or rights arising out of or relating to this Policy, including the breach, interpretation or construction thereof, shall be settled by arbitration. Notwithstanding the foregoing, the Company [MGIC], or the Insured both retain the right to seek a declaratory judgment from a court of competent jurisdiction on matters of interpretation of the policy.

(Compl. Ex. A at § 7.6(a).)

Countrywide initiated litigation, arguing that MGIC improperly denied coverage of nearly 1,400 claims pursuant to the Flow Policy. (Compl. at ¶ 43.) MGIC submitted a demand for arbitration with the American Arbitration Association on February 24, 2010. Countrywide seeks declaratory judgment pursuant to the "interpretation" exception to the arbitration clause, to interpret sections 2.2, 2.3, 2.4 and 4.4 of the Flow Policy. (Compl. at ¶¶ 68-73.) MGIC claims that Countrywide is asking the Court to "construct" the Flow Policy, and that construction of the Flow policy is specifically reserved for arbitration. Thus, MGIC contends that all of Countrywide's contentions are expressly reserved for arbitration, and therefore asks the Court to stay this litigation pending arbitration.

The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

A. **Legal Standard Applicable to Motion to Stay Litigation Pending Resolution of Arbitration.**

The Federal Arbitration Act ("FAA") represents the "liberal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement concerns a transaction involving interstate commerce, thereby falling under the FAA, the Court then must determine if a valid arbitration agreement exists, and whether the scope of the parties' dispute falls within that agreement. 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

If the Court determines that the issues in controversy are within the scope of a valid arbitration agreement, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had ...." 9 U.S.C. § 3. The language of Section 3 is mandatory and it compels a court to stay litigation of issues that are reserved for arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-220 (1985) (internal citations omitted). Where some issues are subject to arbitration and others are not, the trial court has the discretion to stay the balance of proceedings pending arbitration. *Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

B. **The FAA Compels a Stay Pending Resolution of Arbitration.**

1. **The Exception to the Arbitration Clause Allows Either Party to Request Declaratory Judgment for Interpretation of the Flow Policy.**

Countrywide claims that "the arbitration clause gives Plaintiffs' [sic] the right to a court-determined declaratory judgment as to *any dispute* arising out of the Flow Policy." (Opp. Br. at 11) (emphasis added). "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code

3

1  § 1642. Here, the arbitration clause is broad and it dictates that "all controversies ... relating to
2  this policy ... shall be settled by arbitration." (Compl., Ex. A at § 7.6(a).) The arbitration clause
3  contains a narrow exception that allows both MGIC and Countrywide to "seek declaratory
4  judgment ... on matters of *interpretation* of the Policy." (*Id.*) (emphasis added). If Countrywide
5  were entitled to declaratory judgment "as to any dispute arising out of the Flow Policy," the
6  limiting language that creates an exception to the agreement to arbitrate for "matters of
7  interpretation of the Policy" would not make sense. Countrywide effectively reads out this
8  limitation. Further, Countrywide's argument that it is entitled broadly to declaratory judgment
9  as to any dispute arising out of the Flow Policy violates the express terms of the arbitration
10 clause, which provides that all disputes arising from the Flow Policy are subject to arbitration.
11 Thus, the Court rejects Countrywide's argument that it is entitled to broad declaratory relief.

**2. Countrywide's Declaratory Judgment Requests Are Arbitrable.**

13 "Countrywide seeks declaratory relief as to ... how Section 2.4 [of the Flow Policy]
14 should be interpreted concerning the burden of proving first party knowledge or involvement."
15 (Compl. at ¶ 69.) Countrywide also seeks declaratory relief to determine if MGIC can deny
16 coverage "based on alleged misrepresentation of borrower information and opinions regarding
17 property values." (*Id.*) "Further Countrywide seeks declaratory relief as to how the Flow
18 Policy should be *interpreted and applied*" for denials based on alleged violations of
19 underwriting guidelines. (*Id.*) (emphasis added). According to Countrywide, "it is necessary
20 and proper for the Court to declare the rights and obligations of the parties under the policy ...."
21 (*Id.* at ¶ 72.)

22 The dispositive issue is whether Countrywide's requests for declaratory relief are
23 "matters of interpretation of the [Flow] Policy," as opposed to matters of application or
24 construction of the Flow Policy. (*See* Compl., Ex. A at § 7.6(a).) Pursuant to the Flow Policy,
25 all disputes over breach, interpretation, and *construction* of the Policy "shall be settled by
26 arbitration." (*Id.*) (emphasis added). However there is a limited exception for "matters of
27 interpretation of the Policy." (*Id.*) Interpretation involves ascertaining the meaning of
28 contractual words, while construction involves deciding their legal effect. *See Gjerlov v.*

4

1 *Schuyler Laboratories, Inc.,* 131 F.3d 1016, 1020 (Fed. Cir 1997). "[A]s a matter of Federal
2 law ... any doubts concerning the scope of arbitrable issues should be resolved in favor of
3 arbitration." *Moses H. Cone,* 460 U.S. at 24. Here, Countrywide does not ask the Court to
4 ascertain the meaning of any language contained in the Flow Policy, but instead requests the
5 Court issue declaratory relief on the issues of burden of proof, credibility of evidence, and
6 sufficiency of evidence. (*See* Compl. at ¶ 69.) In essence, Countrywide asks the Court to look
7 at the kind and quantity of evidence MGIC uses to support its denials, to apply relevant legal
8 standards like burden of proof to that evidence, and to declare the parties' rights and
9 responsibilities pursuant to the Flow Policy. Countrywide's request is consistent with
10 Countrywide's unpersuasive argument that it is entitled to broad declaratory judgment.
11 However, this request for declaratory judgment goes beyond the limited exception to the
12 arbitration clause because it involves deciding the legal effect of the Flow Policy as opposed to
13 the interpretation or meaning of the terms of the Flow Policy. The Court cannot tailor
14 declaratory relief to the acceptable bounds of the arbitration clause because all of the issues that
15 Countrywide submits for declaratory judgment are arbitrable. Thus, a stay is mandatory
16 pursuant to Section 3 of the FAA because this matter has already been submitted to arbitration
17 and the issues are arbitrable. *See* 9 U.S.C. § 3.

## CONCLUSION

For the foregoing reasons the Court GRANTS MGIC's motion to stay pending arbitration. This action is STAYED pending completion of arbitration. The Clerk is directed to close the file administratively in this case, but it may be reopened for such additional proceedings as may be appropriate and as necessary upon conclusion of arbitration. If the matter is resolved, the parties shall promptly file a dismissal of this action.

**IT IS SO ORDERED.**

Dated: October 18, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

5